# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUIDECRAFT, INC., | Civil Action No. 2:18-cv-01097 |
| Plaintiff, | Electronically Served |
| v. | Judge Mark R. Hornak |
| GOPLUS CORP., a California corporation; COSTZON, INC., a California corporation; COSTWAY.COM, INC., a California corporation; and WEI WU, an individual, | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF**
**<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
|  | A. There Is No Basis For Personal Jurisdiction Over Defendants In Pennsylvania | 2 |
|  | 1. Plaintiff Fails To Allege That GoPlus Or Mr. Wu Have Any Connection To The Websites Soliciting Sales Of The Alleged Infringing Product | 3 |
|  | 2. There Is No Basis For Alter Ego Jurisdiction Over Mr. Wu | 4 |
|  | 3. Website Solicitation Alone Is Insufficient To Convey Personal Jurisdiction | 5 |
|  | B. Plaintiff Fails To Allege Claims For Trademark Infringement, Unfair Competition, Trade Dress, Copyright Infringement, Tortious Interference, And Pennsylvania's Trademark Dilution Law | 8 |
|  | 1. Plaintiff's Copyright Infringement Claims Must Be Dismissed | 8 |
|  | 2. Plaintiff's Tortious Interference Claim Fails For Failure To Allege That It Would Have Had Business Relations | 8 |
|  | 3. Guidecraft's Claim Under Pennsylvania's Trademark Dilution Law Must Be Dismissed | 9 |
|  | 4. Plaintiff's Trade Dress Claim Should Be Dismissed For Failure To Establish That Its Trade Dress Has Acquired Secondary Meaning | 10 |
|  | 5. Plaintiff's Allegations Of Trademark Infringement And Unfair Competition Fail To State a Claim | 10 |
|  | C. Should Dismissal Be Denied, Venue Should Be Transferred To The Central District Of California | 11 |
|  | 1. There Is No Basis For This Action To Be Venued In The Western District Of Pennsylvania | 11 |
|  | 2. The Central District Of California Is The Most Appropriate Venue | 12 |
| III. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

                                                                                                                      **Page**

**Cases**

*A.J. Cangield Co. v. Honickman*,
   808 F.2d 291 (3d Cir. 1986) ............................................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 3, 4

*Browne v. Zaslow*,
   103 F. Supp. 3d 666 (E.D. Pa. 2015) .................................................................................8

*Colur World v. SmartHealth, Inc.*,
   No. 09-00505, 2010 WL 299512 (E.D. Pa. Jan. 25, 2010) ................................................9

*Cottman Transmission Systems, Inc. v. Martino*,
   36 F.3d 291 (3d Cir. 1994) ..................................................................................... 9, 11, 12

*In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litig.*,
   735 F. Supp. 2d 277 (W.D. Pa. 2010) ...............................................................................5

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
   930 F.2d 277 (3d Cir. 1991) ............................................................................................ 11

*Freshtec Food Processing v. East Tray, LLC*,
   Civil Action No. 05-142J, 2005 U.S. Dist. LEXIS (W.D. Pa. Nov. 22, 2005) ............... 12

*Greenberg v. Scholastic, Inc.*,
   No. CV 16-6353, 2018 WL 1532850 (E.D. Pa. Mar. 28, 2018) .......................................8

*Gregory M. Markantone, DPM, PC v. Podiatric Billing Specialists, LLC*,
   No. CIV.A. 14-00215, 2014 WL 2605361 (W.D. Pa. June 9, 2014) ................................8

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
   456 U.S. 844 (1982) ........................................................................................................ 10

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) ..............................................................................................2

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*,
   511 F.3d 350 (3d Cir. 2007) ........................................................................................... 10

*Mon Aimee Chocolate, Inc. v. Tushiya, LLC*,
   2015 WL 2232270 (W.D. Pa. May 12, 2015) ............................................................... 2, 7

*S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*,
 79 F. Supp. 2d 537 (E.D. Pa. 1999) .................................................................................... 7

*Shutte v. Armco Steel Co.*,
 431 F.2d 22 (3d Cir. 1970) ................................................................................................ 13

*Taylor & Fraines Grp., PLC v. McCue*,
 145 F. Supp. 2d 627 (E.D. Pa. 2001) .................................................................................. 11

*Tegg Corp. v. Beckstrom Elec. Co.*,
 No. 08-435, 2008 U.S. Dist. LEXIS 52184 (W.D. Pa. July 1, 2008) .................................... 8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
 952 F. Supp. 1119 (W.D. Pa. 1997) ..................................................................................... 6

**Statutes**

Pa.C.S.A. § 1124 .......................................................................................................................... 9

28 U.S.C. § 1332(b)(2) ............................................................................................................... 13

28 U.S.C. § 1391(b)(2) ......................................................................................................... 11, 13

28 U.S.C. § 1404(a) .................................................................................................................... 12

## I. INTRODUCTION

Plaintiff's Brief in Opposition to Defendants' Joint Motion to Dismiss ("Opposition Brief" or "Opp. Br.") (ECF No. 34) clings to attenuated connections with Pennsylvania through one corporate website and Amazon as the basis for personal jurisdiction over Defendants - three California corporations and one California resident that have no other alleged connection to Pennsylvania.

The Opposition Brief also offers an incomplete defense of the merits of Plaintiff's claims, failing to meaningfully respond to Defendant's arguments that the Second Amended Complaint ("SAC") (ECF No. 40) fails to state a claim for trademark infringement and unfair competition, trade dress infringement, copyright infringement, tortious interference with prospective business relations, and Pennsylvania's Trademark Dilution Law. There is simply no basis to uphold these deficient allegations, and the Court should dismiss the SAC.

The Opposition Brief also argues that - should this Court deny the motion to dismiss - venue in this district is proper, even though there is no real connection between this judicial district and Plaintiff's infringement allegations. Moreover, it ignores the fact that it appears that this venue was selected out of preference to be close *to Plaintiff's counsel's offices*, with no real regard to the difficulties that it will pose to the parties. In fact, neither party actually has a significant presence in Pennsylvania. Accordingly, in the alternative, this action should be transferred to the Central District of California if the Court denies any part of Defendants' motion to dismiss.

## II. ARGUMENT

### A. There Is No Basis For Personal Jurisdiction Over Defendants In Pennsylvania

In order to make a *prima facie* showing of specific jurisdiction over the Defendants, Plaintiff must show that each had minimum contacts with Pennsylvania, which must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." *Mon Aimee Chocolate, Inc. v. Tushiya, LLC*, 2015 WL 2232270 (W.D. Pa. May 12, 2015) (court found a lack of personal jurisdiction in Pennsylvania despite Defendant's use of interactive website for information and commercial purposes).

To find jurisdiction here, the Court must conclude that Defendants "purposely directed" their activities toward Pennsylvania, Plaintiff's claim must have arisen out of the specific activities that Defendant directed towards Pennsylvania, and the assertion of jurisdiction otherwise must comport with traditional notions of "fair play and substantial justice." *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). As discussed in Defendants' moving brief (ECF No. 33), under the facts alleged in the SAC, none of these elements are satisfied and there is no basis for personal jurisdiction over any of the Defendants.

Plaintiff's Opposition Brief ignores that the Complaint alleges no direct contact between Defendants Mr. Wu and GoPlus and Pennsylvania (much less connections related to Plaintiff's claims), fails to allege any non-conclusory facts supporting its claim of alter ego personal jurisdiction, and acknowledges that Costway and Costzon's only contact with Pennsylvania comes from solicitation of the allegedly infringing product on a corporate website and through Amazon. The alleged contacts are simply insufficient to grant personal jurisdiction over Defendants. None of the Defendants has sufficiently availed itself of the privileges and

protections of Pennsylvania law, and jurisdiction under these circumstances would not comport with fair play and substantial justice.

### 1. Plaintiff Fails To Allege That GoPlus Or Mr. Wu Have Any Connection To The Websites Soliciting Sales Of The Alleged Infringing Product

The Complaint is devoid of any well-pleaded allegations that either GoPlus or Mr. Wu purposely directed any infringing activities toward or had any contact at all with Pennsylvania.

Although, the Complaint alleges that some "Kitchen Helper" product ("allegedly infringing product") are sold by Costzon through Amazon and by Costway on the Costway interactive website, it fails to allege facts necessary to find personal jurisdiction in Pennsylvania over GoPlus or Mr. Wu. In fact, Plaintiff makes no allegations that either defendant owns or controls any website related to the alleged infringing product that is accessible to Pennsylvania residents, actually sells the allegedly infringing products on the internet to Pennsylvania residents, or have any other direct contact with Pennsylvania that would provide a basis for personal jurisdiction.[1] *See* SAC, ¶ 29 (allegedly infringing products solicited on "costway.com" and on Amazon); ¶ 33 (Costway sells allegedly infringing products "on the internet through Costway's interactive website, costway.com . . . ."); ¶ 34 (Costzon "sells the Infringing Product throughout the United States, including . . . Pennsylvania, on the Internet through Amazon"). Without any alleged genuine connection to Pennsylvania, there is no basis to find that either

---

[1] In fact, every allegation concerning GoPlus's contacts with Pennsylvania is conclusory. *See, e.g.*, SAC, ¶ 2; ¶ 9 ("upon information and belief, Defendant GoPlus conducts business within . . . Pennsylvania and this judicial district"); ¶ 28 ("GoPlus . . . [began] selling knock-off, infringing versions of [Kitchen Helper] throughout the United States and within this Judicial District" *through Costway and Costzon*); ¶ 29 ("upon information and belief. . . GoPlus . . . sells [the Infringing Products] throughout the United States, including . . . Pennsylvania" *through Costway and Costzon*); ¶ 30 (same); ¶ 31 (same); ¶ 32 (same); ¶ 37 ("GoPlus . . . distributed [the Infringing Product] throughout the United states and within . . . Pennsylvania" *through Costway and Costzon* ); ¶ 51 (same); ¶ 58 (same). These conclusory allegations are not entitled to a presumption of truth in assessing Defendants' Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

GoPlus or Mr. Wu directed their allegedly infringing business activity to the state, and no basis for personal jurisdiction over them for purposes of this action.

While the Complaint alleges that the infringing products are also sold by two other entities, Gymax and Toolsempire, and on eBay by two entities named "Ideacharms" and "Villagehead" (none of which are named as defendants), the only allegations of connections between these entities and either GoPlus or Mr. Wu are conclusory and not entitled to a presumption of truth on a motion to dismiss. *See Ashcroft*, 556 U.S. at 679; SAC ¶ 30 (allegedly soliciting sales of Infringing Product under trade name "Gymax" which Plaintiff "believes to be owned and controlled by GoPlus and Wei Wu"); ¶ 31 (allegedly soliciting sales of Infringing Product through entity named "Toolsempire" which Plaintiff "believes to be owned and controlled by GoPlus"); ¶ 32 (allegedly soliciting sales of Infringing Product on eBay through entities named "Ideacharms" and "villagehead" which Plaintiff "believes to be owned and controlled by Go Plus and Wei Wu"). Notably, Plaintiff cites no cases where a court found personal jurisdiction over a parent entity with no personal contact (even over the internet) based solely on the internet presence of its subsidiaries.

On these alleged facts, there can be no finding that they purposefully availed themselves of the benefits of Pennsylvania law. Therefore, there is no personal jurisdiction in Pennsylvania.

### 2. There Is No Basis For Alter Ego Jurisdiction Over Mr. Wu

Plaintiff also claims that Mr. Wu is subject to personal jurisdiction in Pennsylvania "through his actions as the owner of GoPlus, Costzon and Costway." Opp. Br. at 7. However, this argument glosses over the requirements to assert personal jurisdiction through alter ego allegations, and intentionally conflates Mr. Wu with GoPlus, Costway, and Costzon to provide the misleading impression that he participated in the allegedly infringing conduct based simply on his ownership of those entities. *Id*. at 7-8. Unfortunately for Plaintiff, establishing alter ego

for jurisdictional purposes is significantly more complicated than lobbing unsupported allegations that a parent or owner controls its subsidiary.

"To prevail under the alter-ego theory [of personal jurisdiction], a plaintiff must demonstrate that '[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship.'" *In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010) (finding no alter ego relationship for jurisdictional purposes where evidence failed to show that the parent entity exercised "any control over the internal workings or day-to-day operations of its subsidiaries").

Because Plaintiff fails to allege that Mr. Wu exerted any control and direction over the operations of GoPlus, Costway, or Costzon outside of the normal role of a business owner (which alone is insufficient to provide a basis for alter ego jurisdiction), and because there are no well-pleaded allegations that he had any direct personal contact with Pennsylvania, there is no basis for this Court to find personal jurisdiction, particularly when he has no individual contracts with the state. *See, e.g.*, SAC, ¶ 5 ("Wei Wu is a citizen of the state of California who owns and controls Defendants GoPlus, Costzon, and Costway").[2]

### 3. Website Solicitation Alone Is Insufficient To Convey Personal Jurisdiction

Finally arriving at the primary basis for their claims of personal jurisdiction, Plaintiff alleges that the remaining Defendants, Costzon and Costway, solicit sales of the allegedly infringing product on Amazon and at costway.com, and incorrectly argues that these contacts

---

[2] As with GoPlus, Plaintiff's allegations concerning Mr. Wu's business activities and connections to Pennsylvania are entirely conclusory and not entitled to a presumption of truth on this motion to dismiss. *See, e.g.*, SAC, ¶ 5 (on information and belief, Mr. Wu "owns and controls . . . GoPlus, Costzon, and Costway"); ¶ 12 (Mr. Wu "conducts business within . . . Pennsylvania and this judicial district" ***through Costway and Costzon***); ¶ 28 (Mr. Wu sold Infringing Product "throughout the United States and within this Judicial District" ***through Costway and Costzon***); ¶ 29 (on information and belief, Mr. Wu "sells [Infringing Product] throughout the United States, including . . . Pennsylvania" ***through Costway and Costzon***); ¶ 30 (same); ¶ 32 (same); ¶ 37 (Mr. Wu distributed Infringing Product "throughout the United States, and within . . . Pennsylvania" ***through Costway and Costzon***); ¶ 51 (same); ¶ 58 (same).

alone are sufficient. SAC, ¶ 33 (on information and belief, Defendant Costway markets and sells the Infringing Products throughout the United States, including . . . Pennsylvania, on the internet through Costway's interactive website, costway.com"); ¶ 34 (on information and belief, Defendant Costzon "sells the Infringing Products throughout the United States, including . . . Pennsylvania, in the internet through Amazon"). Defendants are not subject to personal jurisdiction in Pennsylvania simply by virtue of the fact that Costway and Costzon solicit sales from "consumers across the country, including Pennsylvania, and any individual may purchase [the allegedly Infringing Product]." Opp. Br. at. 7.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, the primary support for Plaintiff's argument, is easily distinguished. *See generally* 952 F. Supp. 1119 (W.D. Pa. 1997). There, Plaintiff Zippo Mfg. Co. ("Zippo") brought trademark infringement claims against Zippo Dot Com, Inc. ("Dot Com"), claiming that Dot Com's use of the word "Zippo" in its domain name and elsewhere on its website violated the Zippo trademark. However, unlike here, 3,000 of Dot Com's 140,000 subscribing customers were Pennsylvania residents, showing a clear and undeniable connection with the state. *Id.* at 1121. Further, and more importantly, the very conduct that was the basis for Zippo's claims was the electronic publication to 3,000 subscribing Pennsylvania customers of allegedly infringing website content. This fact alone makes *Zippo* inapposite to the issues currently before the Court.

In assessing whether these contacts were sufficient, the court in *Zippo* applied a "sliding scale," finding stronger grounds for personal jurisdiction where a Defendant plainly conducts business over the internet in a particular jurisdiction, and weak grounds where a "defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id*. at 1124. Ultimately, the court found that Dot Com's contracts "with

approximately 3,0000 individuals and seven Internet access providers in Pennsylvania" was sufficient to confer jurisdiction where "[t]he intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania." *Id*. at 1125-26. Given that *Zippo* was decided in 1997, well before Internet commerce became commonplace, it is unsurprising that 3,000 customers in Pennsylvania would be found sufficient for jurisdictional purposes. But those facts are inapplicable here.

Other courts have criticized the *Zippo* approach. This is because "[e]ven where a website is interactive and permits an exchange of information and commercial transactions, there must also be evidence of sufficient commercial engagement with the forum such that maintenance of the suit does not offend traditional notions of substantial justice." *Mon Aimee*, 2015 WL 2232270, at *4 (finding no personal jurisdiction even though defendants had interactive website, because "the quality and quantity of commercial contact in Pennsylvania does not reflect conduct that is purposefully directed at this forum"); *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999) ("While the posting of a generalized advertisement on the Internet is insufficient to subject the advertiser to jurisdiction . . . minimum contacts may be found where there is 'something more' to indicate that the defendant purposefully directed his activity in a substantial way to the forum state").

This is precisely the case here. Although Plaintiff alleges that Defendants have sold at least *some* infringing product in Pennsylvania, it provides no details indicating that there were any regular sales made in the state, or that any sales made in Pennsylvania were more than fortuitous events showing no intent to direct its sales activities to Pennsylvania residents in particular. Because of the extremely attenuated connection between Defendants and Pennsylvania, the SAC should be dismissed for lack of personal jurisdiction.

**B.    Plaintiff Fails To Allege Claims For Trademark Infringement, Unfair Competition, Trade Dress, Copyright Infringement, Tortious Interference, And Pennsylvania's Trademark Dilution Law**

**1.    Plaintiff's Copyright Infringement Claims Must Be Dismissed**

Plaintiff's opposition essentially acknowledges that its copyright claim must be dismissed, and clings to a pending Supreme Court case to justify further delaying what would otherwise be a well-grounded dismissal.

Numerous district courts throughout the Third Circuit have held that claims for copyright infringement must be dismissed where the claimant's copyright application was pending, but yet to be granted. *See, e.g.*, *Tegg Corp. v. Beckstrom Elec. Co.*, No. 08-435, 2008 U.S. Dist. LEXIS 52184 (W.D. Pa. July 1, 2008); *Greenberg v. Scholastic, Inc.*, No. CV 16-6353, 2018 WL 1532850, at *2 (E.D. Pa. Mar. 28, 2018); *Browne v. Zaslow*, 103 F. Supp. 3d 666, 671-72 (E.D. Pa. 2015); *Gregory M. Markantone, DPM, PC v. Podiatric Billing Specialists, LLC*, No. CIV.A. 14-00215, 2014 WL 2605361, at *3 (W.D. Pa. June 9, 2014).

Acknowledging that Plaintiff's copyright has not reached registration, and had not reached registration at the time of the alleged infringement, Plaintiff fails to cite a single case within the Third Circuit supporting its position. Consequently, Plaintiff's copyright claims must be dismissed.

**2.    Plaintiff's Tortious Interference Claim Fails For Failure To Allege That It Would Have Had Business Relations**

Plaintiff's claim for tortious interference with prospective business relations must fail because it does not allege any specific business relationship that Defendant's conduct allegedly interfered with, and includes no detail about how Defendants' alleged infringement interfered with those business relations.

Allegations of hypothetical potential business relationships, such as those alleged by the SAC's conclusory allegations, do nothing to satisfy the elements, since a party cannot rest its claim on "a mere hope that additional contracts or customers would have been forthcoming but for defendant's interference." *Advanced Power Systems, Inc. v. Hi-Tec. Systems, Inc.*, F. Supp. 1450, 1459 (E.D. Pa. 1992). Here, Plaintiff merely alleges that the alleged infringement "interfered with [Plaintiff]'s prospective contractual relations with potential customers in the market." SAC, ¶ 106. This simply falls short, and requires dismissal.

### 3. Guidecraft's Claim Under Pennsylvania's Trademark Dilution Law Must Be Dismissed

In order to succeed on its Pennsylvania Trademark Dilution Law claim pursuant to Pa.C.S.A. § 1124, Plaintiff must plead (i) ownership of a famous mark, (ii) Defendants' use of that mark [in Pennsylvania], (iii) after Plaintiff's mark became famous, and (iv) actual dilution caused by Defendants' improper use of Plaintiff's mark. *See Colur World v. SmartHealth, Inc.*, No. 09-00505, 2010 WL 299512, at *7 (E.D. Pa. Jan. 25, 2010).

In assessing whether Plaintiff's mark is famous, Pa.C.S.A. § 1124 provides seven factors, including distinctiveness, duration and extent of use by Plaintiff, duration and extent of advertising and publicity in Pennsylvania, geographic extent of mark use, the channels of trade for the goods/services provided by Plaintiff, recognition of the mark used by Plaintiff, and extent of use of the same/similar mark by other third parties. The SAC satisfies none of these requirements. Plaintiff provides no allegations discussing its use of the mark in Pennsylvania, the extent of advertising and publicity in Pennsylvania, rendering its claim facially inadequate. Accordingly, this claim must be dismissed.

### 4. Plaintiff's Trade Dress Claim Should Be Dismissed For Failure To Establish That Its Trade Dress Has Acquired Secondary Meaning

"The purpose of trade dress protection is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).

Even if Plaintiff's trade dress is sufficiently described and is non-functional (which it is not), as required for this claim, Plaintiff fails to allege any facts establishing that its dress has acquired a secondary meaning. The Supreme Court has stated that a trade dress has acquired secondary meaning when "in the minds of the public, the primary significance of a [mark] is to identify *the source of the* product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n.11 (1982).

The Opposition Brief goes to great lengths to describe how long Plaintiff has used the trade dress, and argues vaguely that it "has invested substantial time, resources, and money in making and selling" the children's stool in question. Opp. Br. at 21. But these, and allegations that Plaintiff sold $120,000 of Kitchen Helper stools since 2008 (approximately $10,000 per year), are simply not enough to show that the product's design is sufficiently distinct as to have gained secondary meaning. Not only are these facts alone too vague to support a showing of secondary meaning, but it can hardly be said that the public at large recognized Plaintiff's trade dress as emblematic of Guidecraft (*i.e.*, the source of the product). *Inwood Laboratories*, at 851, n.11.

### 5. Plaintiff's Allegations Of Trademark Infringement And Unfair Competition Fail To State a Claim

Glaringly absent from Plaintiff's Opposition is any objection to Defendant's argument that its "Kitchen Helper" trademark is subject to invalidity because it is generic. As noted in

Defendants' moving brief, this is a situation where Plaintiff is seeking to hold Defendants liable for their right to call the product by its generic name. *A.J. Cangield Co. v. Honickman*, 808 F.2d 291, 298 (3d Cir. 1986). This means the "Kitchen Helper" trademark is not legally protectable, and Defendants have failed to satisfy all elements of a trademark claim. *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

    **C.**    <u>**Should Dismissal Be Denied, Venue Should Be Transferred To The Central District Of California**</u>

        **1.**    **There Is No Basis For This Action To Be Venued In The Western District Of Pennsylvania**

Plaintiff improperly conflates personal jurisdiction with venue, arguing that "venue is appropriate here" because there are sufficient facts to find personal jurisdiction. Opp. Br. at 10. This ignores the clear import of governing law, and only further demonstrates why venue is more properly found in the Central District of California.

Under 28 U.S.C. § 1391(b)(2) - Plaintiff's claimed basis for venue - venue is proper in "a judicial district in which ***a substantial part of the events or omissions giving rise to the claim occurred*** . . . ." "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see also Taylor & Fraines Grp., PLC v. McCue*, 145 F. Supp. 2d 627, 629 (E.D. Pa. 2001) (only basis for venue "would be that a substantial part of the events or omissions giving rise to the claim occurred in this district" where Defendants do not reside and the case may be brought in another venue). This shows an intent to favor defendants in venue disputes, because it requires the events supporting a claim to be substantial, and changed the Third Circuit precedent that venue is appropriate anywhere the infringement or "passing off" occurs, such that "if the infringement

occurred in other districts as well, then venue could be proper in more than one district." *Id*. at 295.

Thus, even if the court finds it has personal jurisdiction over Defendants, Plaintiff has failed to allege that a "substantial part" of the infringing events took place in Pennsylvania. Because the connection between the alleged infringement and this judicial district is attenuated at best, Plaintiff's selection of venue should be rejected, and the case should be transferred pursuant to U.S.C. 1404(a).

### 2. The Central District Of California Is The Most Appropriate Venue

In response to Defendants alternative request to transfer this Action to the Central District of California, Plaintiff argues that "the Southern District of New York provides a more appropriate forum than the Central District of California. As discussed above, because there are no allegations that a "substantial" part of Defendants' overall alleged infringing conduct took place in Pennsylvania (because of the extremely weak connections between Defendants and the state), Defendants have already met their burden of "establishing the need for a transfer of venue." *Freshtec Food Processing v. East Tray, LLC*, Civil Action No. 05-142J, 2005 U.S. Dist. LEXIS, at *7 (W.D. Pa. Nov. 22, 2005). Thus, the only question, should the Court need to reach it, is whether the enumerated factors weigh in favor of transferring the matter to California or New York.

As noted in Defendant's moving brief, in considering a request to transfer a case, the Court assesses private and public factors. With respect to the private factors, Plaintiff argues that its preference completely outweighs the other factors that clearly weigh in favor of transfer to the Central District of California. While Plaintiff's forum preference is entitled to consideration, Plaintiff fails to acknowledge that the Southern District of New York would be an equally

unsuitable venue pursuant to 28 U.S.C. § 1391(b)(2) because there are no allegations that a "substantial" part of the events giving rise to these claims occurred in that district.

Plaintiff glosses over the other relevant factors, arguing that this action should remain in a patently improper venue because: "at least one party will be inconvenienced by having to travel to another district" (Opp. Br. at 12); "Defendants have not shown any physical or financial limitations on their ability to litigate this action in Pennsylvania" (*id*. at 13); and even though "all witnesses and records are [ ] located [in California], that does not mean the factor weighs in their favor" (*id*. at 13). This is no reason to keep the action in a district where neither party has any connection.

Plaintiff's claim that transfer under these circumstances would mean that "every defendant would be able to transfer a case when it was sued outside its forum" is also misplaced. *Id*. at 13. Pursuant to 28 U.S.C. § 1332(b)(2), a case would be properly venued outside of a Defendant's home district where a substantial part of the events giving rise to the claim took place.

Finally, while the vast majority of the public factors are neutral (*i.e.*, enforceability, administrative difficulty, public policies of forum, and familiarity with state law claims), one factor clearly favors a transfer to the Central District of California. Namely, it is undisputed that the proximity of the parties, witnesses, and evidence to the Central District of California would create practical efficiencies that would reduce the time and expense to resolve Plaintiff's claims. *Shutte v. Armco Steel Co.*, 431 F.2d 22, 25 (3d Cir. 1970).

Should this Court deny Defendants' request for dismissal, this action should be transferred to the Central District of California. The public and private factors weigh in favor of a transfer to the Central District of California because a transfer to the Southern District of New

York would only cause further delay and judicial waste - since the parties would be further motivated to rehash the same jurisdictional fight that has already been briefed multiple times.

## III. CONCLUSION

For the reasons set forth above, Defendants' Joint Motion to Dismiss should be granted in full, and no leave to amend should be granted since Plaintiff has already had two chances to correct the deficiencies in its Complaint. Should the Court deny the Motion to Dismiss in any part, it should issue an order transferring this action to the U.S. District Court for the Central District of California, which is the appropriate venue because of the significantly stronger connection to the facts underlying Plaintiff's claims, and which is significantly more convenient for the parties, witnesses, and evidence.

Respectfully submitted,

Dated: January 31, 2019

By: /s/ Jenna C. Hutchinson
TROUTMAN SANDERS LLP

Jenna C. Hutchinson
PA ID No. 316553
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6034
Email: jenna.hutchinson@troutman.com

Attorneys for Defendants
GOPLUS CORP., a California corporation;
COSTZON, INC., a California corporation;
COSTWAY.COM, INC., a California corporation; and WEI WU, an individual

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies under penalty of perjury under the laws of the State of Pennsylvania that, on January 31, 2019, all parties' counsel of record was served via ECF.

                                                        ____/s/ Jenna C. Hutchinson_____